Wilhelmina MOORE, Appellant,

v.

Henry E. BONNER, Individually and in his official capacity as Superintendent of Schools for Berkeley County and Chairman of the Berkeley County Board of Education; Marvin Wiggins; Joseph Myers; Harold Staley; Graydon Gray; James Barry; Carolyn Lewis; Dorothy Bryan; David Fashion; J.P. Peagler and Roy Strickland, Each Individually and each in his or her official capacity as a member of the Berkeley County Board of Education and The Berkeley County School District, Appellees,

National Education Association, Amicus Curiae.

No. 81–2175.

United States Court of Appeals, Fourth Circuit.

Argued Sept. 16, 1982.

Decided Dec. 13, 1982.

Allan R. Holmes, Charleston, S.C. (Halio & Holmes, Arthur C. McFarland, Charleston, S.C., on brief), for appellant.

David T. Duff, Columbia, S.C. (Kenneth L. Childs, Emma Ruth St. Pierre, Childs & Duff, Columbia, S.C., R. Markley Dennis, Jr., Dennis & Dennis, Moncks Corner, S.C., Randall T. Bell, McNair, Glenn, Konduros, Corley, Singletary, Porter & Dibble, P.A., Columbia, S.C., on brief), for appellees.

Joy L. Koletsky, Nat. Educ. Ass'n on brief, for amicus curiae.

Before HAYNSWORTH, Senior Circuit Judge, and SPROUSE and CHAPMAN, Circuit Judges.

SPROUSE, Circuit Judge:

Wilhelmina Moore, a black South Carolina public school teacher, brought this civil rights action as a result of the defendants' decision not to renew her teaching contract for the 1980–81 school year. Moore appeals from the summary judgment entered by the district court in favor of the defendants, Henry E. Bonner, the Superintendent of Berkeley County Schools; the individual members of the Berkeley County Board of Education (the Board); and the Berkeley County School District.[1] Since the Board had upheld its initial determination in an administrative hearing requested by Moore, the district court held that the doctrine of administrative collateral estoppel precluded Moore from maintaining an action in federal court under 42 U.S.C. §§ 1981, 1983, and 1985. We disagree and reverse.

Moore served as a guidance counselor and teacher in the Berkeley County school system for seventeen years prior to the Board's decision not to renew her contract. During that period, she apparently had been outspoken on racial issues involving the school system and had energetically expressed her views concerning educational practices affecting minority students. Prior to the events which immediately preceded the Board's decision, she had been the center of at least one public controversy as a result of a decision to suspend her temporarily from employment.

The principal events underlying the present appeal occurred in early 1980. On January 24, 1980, a white administrator in the District visited the school where Moore worked as a guidance counselor to supervise "mastery" tests to be given to students enrolled in a corrective reading program. Moore objected to the tests and after a heated confrontation with the administrator, the tests were cancelled. Superintendent Bonner subsequently asked Moore by letter to explain her actions in writing. After receiving Moore's response, Bonner advised her that the response was insufficient and again requested an explanation. Bon-

ner also indicated that Moore's explanation might have a bearing on whether she would be recommended for reemployment for the upcoming school year. Moore replied by letter a month later, in March 1980, inquiring whether charges had been lodged against her. On April 1, 1980, Bonner informed Moore that he would recommend to the Board that her employment contract not be renewed. On April 10, 1980, the Board adopted Bonner's recommendation.

Moore appealed the Board's decision pursuant to the South Carolina Teacher Employment and Dismissal Act. S.C.Code Ann. § 59–25–410 *et seq.* (1976 & Cum. Supp.1981). The Act entitles a teacher to a formal hearing before the board, which must then determine whether the evidence showed good and just cause for the dismissal. S.C.Code Ann. § 59–25–470 (Cum.Supp. 1981). Following Moore's hearing, the Board sustained its initial decision. The reasons given by the Board for the dismissal were appellant's unprofessional conduct and insubordination in connection with the January 24th incident. Moore did not exercise her statutory right to appeal the Board's decision to the state circuit court. She initiated instead the present action in federal court pursuant to 42 U.S.C. §§ 1981, 1983, 1985, in which she claimed that the decision not to renew her contract was the product of racial discrimination and retaliation for the exercise of her rights to free speech and association.

In applying the doctrine of administrative collateral estoppel to bar appellant's claim, the district court relied heavily upon the Supreme Court's decision in *Allen v. McCurry,* 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980). That reliance is misplaced.

■ It is well settled that the full-faith-and-credit clause [2] and its statutory parallel, 28 U.S.C. § 1738 (1976), require federal courts to give preclusive effect to those state court judgments which are given that

---

1. *Moore v. Bonner,* 526 F.Supp. 143 (D.S.C. 1981).

2. U.S. Const. art. IV., § 1.

same effect by the courts of the forum State. *See Allen v. McCurry, supra.* Federal decisions have not, however, generally accorded this preclusive effect to the unappealed decisions of state administrative agencies[3] and to do so would be contrary to congressional policy and to the rationale of recent Supreme Court decisions.

*Allen* provides a useful starting point for analyzing the relationship of section 1983, administrative collateral estoppel, and the full-faith-and-credit clause. In *Allen,* the Court in considering the effect of a state court judgment held that Congress did not intend section 1983 to override 28 U.S.C. § 1738, or the common law rules of collateral estoppel and *res judicata.* In reaching this decision, however, the Court noted that its construction of section 1983 for this purpose was limited to "whether the conventional doctrine of collateral estoppel applies to the case at hand." *Id.* at 96 n. 7, 101 S.Ct. at 415 n. 7. Consequently, *Allen* stands for the proposition that a state court judgment may have binding effect on a subsequent suit under section 1983. *Id.* at 104, 101 S.Ct. at 420.

Likewise, we are not persuaded by the appellees' argument that the Court's decision in *Kremer v. Chemical Construction Corp.,* 456 U.S. 461, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982), dictates that the Board's decision be given preclusive effect. In *Kremer,* the Court addressed the relationship between Title VII and the principles of comity and repose embodied in section 1738. *Kremer* involved the specific question of whether a federal court in a Title VII case should give preclusive effect to a decision of a *state court* upholding a state administrative agency's rejection of an employment discrimination claim as meritless when the state court's decision would be *res judicata* in the state's own courts. In concluding that Title VII does not create an exception to section 1738, the Court indicated that only state court judgments may be entitled to preclusive effect under the statutory scheme of Title VII. *Id.* at 470, 102 S.Ct. at 1891. The Court further noted that its holding in *Allen* stood for the proposition that "preclusion rules apply in § 1983 actions and may bar federal courts from freshly deciding constitutional claims *previously litigated in state courts."* *Id.* at 476, 102 S.Ct. at 1895 (emphasis added). *Kremer,* therefore, does not support appellees' contention that the full-faith-and-credit requirement of section 1738 should apply in the present case.

■ The appellees argue that the South Carolina courts would give total preclusive effect to an unappealed decision of a county board of education. Although this contention may be correct,[4] that state rule does not entitle an unappealed state administrative decision to the full-faith-and-credit dignity accorded state court decisions. State forums are of course available to plaintiffs in section 1983 actions.[5] The choice of whether to proceed in a state or federal forum, however, necessarily belongs to the plaintiffs and they cannot be deprived of it by a state rule which gives preclusive effect to unappealed state administrative decisions. A contrary rule would frequently force plaintiffs to choose between foregoing the opportunity to resolve their problems before state administrative bodies and relinquishing their congressionally mandated access to federal courts.

---

3. *See Anderson v. Babb,* 632 F.2d 300, 306 n. 3 (4th Cir.1980); *James v. Board of Education,* 461 F.2d 566 (2d Cir.1972); *Mitchell v. National Broadcasting Co.,* 553 F.2d 265, 276 (2d Cir. 1977) ("Res judicata attache[s] when plaintiff [chooses] to pursue her claim in the state courts, and not before."). *See also Patsy v. Florida Intern. University,* 634 F.2d 900, 910 (5th Cir.1981), *rev'd on other grounds,* —— U.S. ——, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982) (state administrative proceedings carry no *res judicata* or collateral estoppel baggage into federal court). *But see Gear v. City of Des Moines,* 514 F.Supp. 1218 (S.D.Iowa 1981) (administrative collateral estoppel applicable to § 1983 claim where state agency acted in judicial capacity and parties afforded full and fair opportunity to litigate).

4. *See Earle v. Aycock,* S.C., 279 S.E.2d 614 (1981).

5. *See Allen v. McCurry, supra; Patsy v. Board of Regents of the State of Florida,* —— U.S. ——, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982).

The great majority of disputes such as the one involved in the present case should be and probably are resolved by appeals at the county and state administrative level. If such appeals were to act as a possible bar to the filing of a section 1983 claim in federal court, there can be little doubt that many civil rights plaintiffs would ignore their state administrative remedies and contest their claims initially in federal court. We do not believe such a result is desirable. Inherent in the opportunity of civil rights plaintiffs to have their grievances resolved in either state or federal court is the principle that while plaintiffs are sometimes limited by *res judicata* and collateral estoppel to only one bite of the judicial apple, the choice of the· bite is theirs.

REVERSED AND REMANDED.